IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| | * | |
| GAIL B. SPARROW, et al., | * | |
| | * | |
| v. | * | Civil No. JFM-14-0388 |
| | * | |
| BANK OF AMERICA, N.A., et al., | * | |
| | * | |
| | ****** | |

## MEMORANDUM

Plaintiffs Gail and Vincent Sparrow ("the Sparrows") seek relief from defendants Bank of America, N.A. ("BANA"), Nationstar Mortgage, LLC ("Nationstar") and the Fisher Law Group, PLLC ("Fisher") for alleged violations of the Real Estate Settlement Procedures Act ("RESPA), Racketeer Influenced and Corrupt Organizations Act ("RICO"), Section 1981 of the Civil Rights Act, breach of contract, intentional infliction of emotional distress, and fraud. The Sparrows also seek injunctive relief and an accounting. The defendants now move to dismiss. The parties have fully briefed the issues and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motions will be granted.

## BACKGROUND

The defendants do not dispute the Sparrows' basic account of what transpired and all reasonable inferences are drawn in the Sparrows' favor.

In December of 2003, the Sparrows purchased the property at 328 Talbott Avenue in Laurel, Maryland, which they refinanced in 2005 with a loan totaling $312,800.00. Countrywide Home Loans, Inc. ("Countrywide") originated and refinanced the Sparrows' loan before Countrywide was acquired by BANA. Starting in 2012, however, the Sparrows allege

that BANA and Nationstar—BANA's successor—misapplied mortgage payments, failed to respond to the Sparrows' communications and, through Fisher, wrongfully initiated foreclosure proceedings on the property.  Three of the Sparrows' letters—the first two involving BANA, the last involving Nationstar—have particular relevance for their claims, since the Sparrows allege that these correspondances constitute valid "qualified written requests" under RESPA.

Specifically, in a letter to BANA on August 13, 2012—identified as a "qualified written request under § 6 of the "Real Estate Settlement Procedures Act"—the Sparrows requested that BANA: (1) respond to two previous letters and acknowledge the "receipt of executed loan documents"; (2) correct the Sparrows' account in some unspecified way (or provide a reason for not doing so); and (3) apply payments pursuant to the instructions in a previous letter.  (ECF No. 22-1 at 2–3).  According to the Sparrows, although the bank responded in November 2012, its response did not adequately explain the Bank's "position" with respect to the Sparrows' previous inquiries, or provide the Sparrows with a "full explanation of [their] duties and rights under the loan." (ECF No. 22-2 at 2).   In a subsequent letter on February 20, 2013, the Sparrows expressed these concerns, before additionally contesting the amount held in escrow for Prince George County real estate taxes, requesting a reduction in the principal of the loan, and indicating that a $4800 check should be applied to the Sparrows' mortgage payments through September.  *Id.* at 2-3.

After BANA notified the Sparrows of its intent to transfer the servicing of their loan to Nationstar, the Sparrows renewed their correspondance on April 20, 2013 in order to dispute BANA's assessment of (1) the date of the Sparrows' next required payment and (2) the bank's application of the Sparrows' previous payments.  (ECF No. 22-3 at 2–3).  As with their August 2012 letter, the Sparrows identified their April 20 correspondance as a QWR.  *Id.*  BANA did not

respond, but transferred the loan to Nationstar on May 1, 2013.  On July 16, Nationstar informed

the Sparrows that they were in default.  (ECF No. 22-4).  On July 22, 2013, the Sparrows

contested this statement of default, reiterated their concerns regarding their mortgage loan's

principal and affiliated taxes, and enclosed two checks totaling six thousand dollars to cover the

payments due for July and August of 2013.  (ECF No. 22-5 at 2–4).

Nationstar responded on August 8, 2013.  Acknowledging receipt of the Sparrow's July

22 letter and enclosed checks, it confirmed that the account was current and that no amount was

due until the September payment.  (ECF No. 22-6 at 2).  The letter also noted that, contrary to

the Sparrows' previous assertions, (1) Nationstar had not reported to the credit bureaus any

"negative indicators in connection to default," and (2)  the Sparrows did not have a past due

amount of $24,395.38.  *Id.*  Although the letter rebutted the Sparrows' charges regarding the

proper amount of the Price George County real estate tax, Nationstar requested further

information from the Sparrows in order to supplement its ongoing investigation into the account.

*Id.*  On August 31, 2013, Nationstar informed the Sparrows of the amount remaining on the

loan.

Meanwhile, the Sparrows allege that on August 31, 2013, they mailed a $6000 check to

Nationstar to be applied to their monthly mortgage payments through November 2013.

Although Nationstar informed the Sparrows that it had not received the check, the Sparrows did

not re-submit the payment due for September 2013.  As a result, on October 18, Nationstar

informed the Sparrows that their loan was in default and could be cured until December 2, 2013.

The Sparrows allege that they contacted Nationstar through telephone and email to dispute the

status of their payments and that Nationstar agreed to investigate those claims.  Around

December 4, 2013, however, Nationstar referred the Sparrows' loan for foreclosure.  Although

3

the Sparrows contend that they mailed Nationstar a $6000 check to cure the default at that point, they allege that Nationstar, through the Fisher Law Group, filed a foreclosure action anyway.

Because they maintain that BANA, Nationstar and the Fisher Law Group—alternately and in combination—improperly responded to the Sparrows' communications regarding the status of their mortage, misapplied payments, and wrongfully initiated a foreclosure action against them, the Sparrows filed suit in this court on February 10, 2014, seeking injunctive relief and an accounting in addition to damages under RESPA, RICO, § 1981 of the Civil Rights Act, and the common law for breach of contract, intentional infliction of emotion distress, and fraud. Plaintiffs filed an amended complaint on April 16, 2014.[1]  Defendant Fisher moved to dismiss on April 4, 2014; defendants BANA and Nationstar then followed suit, and moved to dismiss on April 30, 2014.

In order to support their opposition to defendants' motions and their third request for judicial notice, the Sparrows additionally moved for permission to file electronic media media on May 30, 2014.

## STANDARD

The purpose of Rule 12(b)(6) is to test the sufficiency of the plaintiffs' complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). At the same time, "[e]ven though the requirements for pleading a proper complaint are

---

[1] The Sparrows have not retained counsel and have instead elected to proceed *pro se*.

substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

As a result, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, to withstand a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). In setting forth the "grounds of [their] entitlement to relief," plaintiffs therefore must offer more than "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and alterations omitted) (quoting *Twombly*, 550 U.S at 555, 557)). It is not enough that the well-pled facts create "the mere possibility of misconduct"—a complaint must instead "state a claim to relief that is plausible on its face," so as to permit the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 679 (internal quotation marks and alterations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and alterations omitted). In those instances, "the complaint has alleged—but [] has not shown—that the pleader is entitled to relief," and dismissal under 12(b)(6) is appropriate. *Id.* at 679 (internal quotations and alternations omitted) (citing Fed. Rule. Civ. Proc. 8(a)(2)).

**ANALYSIS**

I.        **The Sparrow's 12 U.S.C. § 2605 RESPA claim against BANA and Nationstar**

Because they argue that BANA and Nationstar failed to timely respond to their three

qualified written requests ("QWR") and neglected to sufficiently investigate or address the

substantive issues raised by those QWRs, the Sparrows allege that BANA and Nationstar

violated 12 U.S.C. § 2605 ("RESPA").  According to the defendants, however, the Sparrows

have failed to state a RESPA claim for three reasons:  (1) the Sparrows' letters are not QWRs;

(2) Nationstar's response to the Sparrows' July 2013 letter complied with its obligations under

RESPA; and (3) the Sparrows have failed to allege actual damages.  With respect to defendants'

latter two arguments, I agree.

With RESPA, Congress created a consumer protection statute that requires lenders who

either transfer or assume the servicing of a federally related mortgage loan to acknowledge and

respond to a borrower's requests for certain types of information.  12 U.S.C. § 2605; *see*

*generally, e.g.*, *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096 (D. Minn.

2010).  Specifically, although servicers need not respond to general inquiries about a loan—or

address a borrower's objections to the loan's terms—RESPA does obligate a servicer to respond

to "qualified written requests" regarding the loan's "servicing."  *See id.*  A QWR is a written

correspondence that provides:  (1) sufficient information for the servicer to identify the name and

account of the borrower, and (2) either a statement of the reasons that the borrower believes the

account is in error or (3) sufficient detail regarding the other information sought by the borrower

with respect to the loan's servicing.  12 U.S.C. § 2605(e)(1)(B).  "Servicing," meanwhile,

involves: (1) the servicer's receipt of scheduled periodic payments—including amounts for

escrow accounts; and (2) the servicer's subsequent application of a borrower's payment to the

principal, interest, and/or other expenses required by the terms of the loan.  *Id.* § 2605(i)(3).

When a borrower submits a valid QWR, a servicer faces two immediate deadlines:  it has twenty days to acknowledge receipt of the letter, and sixty days to investigate the borrower's claims.  12 U.S.C. § 2605(e)(1)(A), (2).  Following the investigation, the servicer must either: correct the account and inform the borrower of the correction; rebut, in writing, the borrower's allegations of account errors; provide the requested information; or explain why the information is unavailable.  *Id.* § 2605(e)(2)(B) & (C).  A borrower may recover "actual damages" if the loan servicer fails to comply with these requirements.  *Id.*  § 2605(f)(1)(A).

Here, RESPA's requirements mean that, in order to state a claim under  § 2605(e), the Sparrows must allege that: (1) BANA and Nationstar are loan servicers; (2) the Sparrows' letters constitute valid QWRs; (3) defendants failed to adequately respond to the Sparrows' QWRs within the various statutory periods; and (4) defendants' violation of RESPA caused the Sparrows actual damages.  *See Marsh v. BAC Home Loans Servicing, LP*, No. 09-cv-813 2011 WL 116415 at *7 (M.D. Fla. March 29, 2011) (citing *Frazile v. EMC Mortg Corp.*, 382 F.App'x 833, 836 (11th Cir. 2010) (requiring damages as a necessary element for a § 2605 claim); *Allen v. United Fin. Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D. Cal. 2009) (observing that courts have required a showing of pecuniary damages in order to state a claim under § 2605)); *see also Luther v. Wells Fargo Bank*, No. 11-cv-0057 2012 WL 4405318 at * 7 and n.6 (W.D.Va. Aug. 6, 2012) (citations omitted) (noting that although other courts have split on whether RESPA's requirement of actual damages encompasses non-pecuniary damages for emotional distress, courts within the Fourth Circuit have limited recovery to pecuniary injuries only).

According to the defendants, however, the Sparrows' amended complaint is deficient with respect to the final three elements.  Specifically, defendants argue that the Sparrows' letters were not valid QWRs; Nationstar nevertheless replied in accordance with RESPA; and the

Sparrows did not incur actual damages from the way that BANA and Nationstar handled their correspondance.

As a preliminary matter, it is necessary to distinguish between the Sparrows' claims against BANA and Nationstar.  Although the Sparrows corresponded with their loan servicers multiple times between 2012 and 2014, their RESPA claims stem only from their letters sent in August 2012, April 2013 and July 2013—the only letters identified as QWRs.  Because BANA—the initial servicer of the Sparrows' mortgage loan—transferred the servicing of the loan to Nationstar on May 1, 2013, BANA cannot be liable for any RESPA claim arising from the Sparrows' July 2013 letter.[2]

I will address the Sparrows' RESPA claims against each defendant accordingly.

A.   BANA

According to BANA, the Sparrows' August 2012 letter is not a QWR because the letter merely requests that BANA respond to the Sparrows' previous correspondence.  This, BANA argues, is not sufficiently related to the loan's  "servicing" to qualify as a QWR under § 2605.  Although BANA is correct that a mere request for a response to prior letters would not constitute a valid QWR, the bank ignores the other components of the Sparrows' August 2012 correspondance.  Specifically, the letter also requests that BANA apply payments pursuant to the instructions contained in a previous letter.  (ECF No. 22-1 at 2–3).  Although the letter stops short of positively identifying purported errors to the account, it does raise issues regarding

---

[2] It is not clear whether Nationstar could liable for any RESPA claim arising from the Sparrows' letters to BANA in August 2012 or April 2013, as Nationstar's liability may turn on the terms of the agreement transferring the servicing of the loan from BANA to Nationstar.  This agreement is not part of the record here.  In any event, because, as discussed below, the Sparrows have not satisfactorily pleaded that they suffered damages from BANA's alleged violation of RESPA, Nationstar's hypothetical liability for BANA's violations does not affect the outcome of defendants' motions.

possible irregularities in the application of payments to the loan.  In doing so, the Sparrows'

letter avoids being a global challenge to the loan itself, and lands squarely within RESPA's

definition of "servicing."   *See* 12 U.S.C. § 2605 (i)(3).

      BANA, however, maintains that, even if the letter sought information related to the

servicing of the loan, the correspondence did not provide sufficient information for BANA to

determine the dispute or information sought by the Sparrows.  I disagree.  The August 2012 letter

contains both the name and loan number associated with the account, and requests that "my

instructions for the payment enclosed in my letter of August 3, 2012 be applied as set out in my

letter."  (ECF No. 22-1 at 3).  BANA does not dispute that it received earlier letters from the

Sparrows or that those letters contained instructions regarding how various payments should be

applied.  Because the August 13, 2012 letter provides information for BANA to identify (1) the

name and number of the account and (2) the date and content of a previous letter relating to the

servicing of the loan, the Sparrows' August 13, 2012 letter meets the requirements of a valid

QWR.  *Id.*  Moreover, because the Sparrows allege, and BANA does not dispute, that BANA's

first response to the August 2012 letter arrived in November 2012—well past RESPA's sixty day

statutory deadline to respond—BANA failed to abide by its obligations under § 2605.

      Similarly, in the Sparrows' second alleged QWR—a letter sent April 20, 2013—the

Sparrows requested a complete reconciliation of the payments to the account, sought to reduce

the principal amount of the loan, and contested the next payment date, arguing that it should be

July 1, 2013 instead of May 1, 2013.  (ECF No. 22-3).  Although BANA is correct that

information relating to a borrower's attempt to challenge the validity of a loan or negotiate its

terms does not constitute a QWR, the April 20 letter also requests information relating to the date

of the next payment and the status of prior payments to the account—actions that, again, relate to

the servicing of the loan, not its validity.  As with the August 13, 2012 letter, there is no evidence

that BANA responded to the April 20 letter in the timeframe mandated by RESPA.  Instead, on

May 1, 2013, BANA transferred the servicing of the Sparrows' loan to Nationstar.

Despite this alleged negligence in responding to the Sparrows' QWRs, BANA argues that

the Sparrows have failed to plead damages relating to BANA's treatment of either the August 13

2012 letter or the April 20, 2013 letter.  I agree.  Although the Sparrows' amended complaint

alleges damages of $175,000, it provides no traceable link between this figure and BANA's

failure to respond to the parts of the Sparrows' letters that may be viewed as QWRs.   To the

extent that can be discerned from amended complaint, the Sparrows' damages instead flow from

the alleged foreclosure of their property.[3]   Moreover, the series of events resulting in this

foreclosure began in August 2013, when Nationstar allegedly failed to process and apply a $6000

check to the Sparrows' account, and then improperly proceeded with foreclosure despite the

Sparrows' repeated attempts to cure the default.  Nationstar's alleged errors, therefore, began

several months after BANA transferred the servicing of the Sparrows' loan to its successor.

Moreover, on August 8, 2013, Nationstar's letter to the Sparrows observed that "[a]s of

the date of this correspondence, all payments on the account have been received and posted" and

"[a]t this time the account is current."  (ECF No. 22-6 at 2).  Nationstar also confirmed that,

based on BANA's payment history for the Sparrows' account, no amount was past due, and the

account did not "show any negative indicators in connection to default."  *Id.*  In other words, to

the extent that the Sparrows' letters to BANA objected to (1) the loan's payment schedule and

(2) BANA's application of those payments, these issues were largely resolved by August 2013

---

[3] The parties dispute whether there is a foreclosure action currently pending against the property
in Prince George County.   According to the defendants, there is no record of a pending action of
this nature.

without pecuniary loss to the Sparrows.  For this reason, the Sparrows' conclusory assertion of

damages lacks the requite factual support to establish a plausible claim for relief under § 2605.

Dismissal is therefore appropriate with respect to the Sparrows' RESPA claims against BANA.

    *B.  Nationstar*

        In addition to their correspondence with BANA, the Sparrows' July 22, 2013 letter to

Nationstar "reiterated" the issues raised by their previous QWRs.  (ECF No. 22-5).  Nationstar

does not dispute that the Sparrows' July 2013 letter constituted a valid QWR.  Rather, Nationstar

argues that its response complied with the requirements set forth by § 2605.  I agree.  On August

8, 2013—seventeen days after the Sparrow's July 2013 QWR—Nationstar contacted the

Sparrows via a letter that: (1) updated the Sparrows of its ongoing investigation into the status of

their account, and (2) informed them that their payments were current, they had no amounts past

due, and that BANA's servicing of their account had resulted in no negative indicators related to

default.  (ECF No. 22-6).  Additionally, Nationstar verified the amount of the Prince George

County real estate tax, requested further information in order to supplement its ongoing

investigation, and provided an accounting of the loan by August 31, 2013.  *Id.*  In doing so,

Nationstar effectively met RESPA's requirements for servicers.  Because the Sparrows fail to

allege that Nationstar plausibly violated § 2605, Nationstar's motion to dismiss will be granted

on this claim.

**II.    The Sparrows' RICO claim under 18 U.S.C. § 1962**

        According to the Sparrows, the defendants—presumably including BANA, Nationstar

and Fisher—violated 18 U.S.C. 1962(c) through an alleged pattern of racketeering activity and

the collection of an unlawful debt.  Because I find that the Sparrows have not adequately alleged

the facts necessary to plead either a "predicate act" of racketeering activity or an "unlawful debt," defendants' motions to dismiss are granted with respect to the Sparrows' RICO claims.

Originally designed to curtail organized crime's infiltration of legitimate businesses, RICO advances two key purposes:  (1) to protect legitimate enterprises from being targeted; and (2) to protect members of the public from defendants who seek to use enterprises as a vehicle through which to conduct unlawful activity.  *See National Organization f or Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994).   To this end, RICO provides a private claim for treble damages for any person injured in his business or property by a violation of 18 U.S.C. § 1962. As a general matter, a civil plaintiff must establish four core elements:  (1) a pattern of racketeering; (2) an enterprise engaged in/affecting interstate or foreign commerce; (3) a nexus between the pattern of racketeering and the enterprise; and (4) an injury to their business or property attributable to the racketeering activity.  *Sedima S.P.R.L. v. Imrex Company, Inc. et al.*, 473 U.S. 479 (1985).

Here, defendants correctly observe that the Sparrows have failed to establish the first element of their claim: a pattern of racketeering activity.  Specifically, to demonstrate "racketeering activity," a plaintiff must allege that defendants committed one or more of the predicate acts of criminal activity enumerated by § 1961(1).  Although the list of predicate acts that constitute racketeering activity is extensive—it includes a variety of federal and state criminal offenses including mail fraud, wire fraud and money laundering—it is also exclusive. *See, e.g.*, 18 U.S.C. § 1341; 18 U.S.C. § 1342; 18 U.S.C. § 1956, § 1957, *et seq.*  Moreover, it does not include common law fraud under state law. *See generally Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d. Cir. 1999).  Here, the Sparrows fail to identify any of the enumerated predicate acts articulated under § 1961(1).  Because the Sparrows do not

link the defendants' actions to the specific conduct that RICO prohibits, they have failed to state a claim based on a pattern of racketeering activity.

In addition to a pattern of racketeering activity, however, the collection of an unlawful debt may also trigger a violation of § 1962(c). *Day v. DB Capital Group, LLC*, No. DKC-10-1658, 2011 WL 887554, at *13 (D. Md. Mar. 11, 2013) (citation and quotation marks omitted). To state a RICO claim based on the collection of an unlawful debt, a plaintiff must establish eight elements: (1) there was a RICO enterprise; (2) its activities affected interstate commerce; (3) the individual defendants were employed by or associated with the enterprise; (4) the defendants used, in the operation of the enterprise, income derived from the collection of an unlawful debt; (5) the individual defendants participated in the conduct of the affairs of the enterprise through collection of unlawful debt; (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usery; (7) the debt was incurred in connection with the business of lending money at a usurious rate; and (8) the usurious rate was at least twice the enforceable rate. *Id.*

Put simply, in addition to the elements of a RICO claim predicated on racketeering activity, a plaintiff pleading a RICO claim based upon the collection of an unlawful debt must also establish (1) the collection of an unlawful debt and (2) the use of proceeds from that collection to further the enterprise. *See Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F.Supp.2d 577, 587 (D.Md. 2013). Under § 1961(6), an unlawful debt includes:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is enforceable under State or Federal law . . . because of the laws relating to usury and (B), which was incurred in connection with the business of gambling . . . or the business of lending money or a thing at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate[.]

*Id.* Here, the Sparrows do not allege that the rate of their mortgage loan was usurious, nor do they provide information regarding the specific interests rates charged, or explain how the loans exceeded the usury limit. For this reason, I agree with defendants that the Sparrows have failed to state a RICO claim based on the collection of an unlawful debt.

### III.     The Sparrows' 42 U.S.C. § 1981 claim

In addition to seeking relief pursuant to RESPA and RICO, the Sparrows allege a civil rights claim under 42 U.S.C. § 1981. The Sparrows contend that the alleged failures of BANA, Nationstar and Fisher to appropriately acknowledge, respond to, and correct the issues raised by the Sparrows with respect to the status of their mortgage loan stemmed from the Sparrows' racial identity and membership in a protected class. As noted by defendants, however, the Sparrows' allegations fail to state a plausible claim for relief under § 1981.

Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 447–48 (2008). To sustain a § 1981 action, a plaintiff must establish that a defendant intentionally discriminated against him on the basis of race. *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987); *see also Gen. Bldg. Contractors Ass'n, Inc. v. Penn*, 458 U.S. 375, 391 (1982) (noting that § 1981 can only be violated by purposeful discrimination). In other words, a § 1981 plaintiff must show three things: (1) membership in a protected class; (2) discriminatory intent on the part the defendant; and (3) interference with the rights or benefits associated with making and enforcing contracts. *See generally Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 349 (4th Cir. 2013); *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413–14 (7th Cir. 1996); *Green v. State Bar of Texas*, 27 F.3d 1038, 1086 (5th Cir. 1994).[4]   Here, the

---

[4] These elements are common to both § 1982 and § 1981 claims.

14

Sparrows fail to allege specific facts showing a causal link between the defendants' loan practices and the Sparrows' race. Instead, the Sparrows simply allege that, upon information and belief, the defendants "would not have ignored the claims and concerns as well the contractual rights of similarly situated Caucasian citizens of the United States." (Compl. ¶ 25; ECF No. 22 at 9). The Sparrows do not, however, provide any additional hint, context or detail regarding the information that allegedly proves their claim of racial discrimination. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss, the Sparrows have not stated a plausible claim for relief under § 1981. *Twombly*, 550 U.S. at 570.

### IV.     The Sparrows' Claims for Breach of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing

In their amended complaint, the Sparrows also allege that defendants are liable for breach of contract, as defined by the substantive law of several states, including Maryland. Defendants are correct, however, that the Sparrows have failed to allege the necessary facts regarding a breach of contract claim to survive a motion to dismiss.

Although the Sparrows never identify the specific contract that forms the basis of their claim against BANA and Nationstar, their allegations are presumably based on the underlying mortgage agreement between the parties. As BANA and Nationstar note, however, the Sparrows fail to identify either the specific terms of the agreement that the defendants allegedly breached, or the underlying conduct that constituted the breach. With respect to the Sparrows' claim against Fisher, the complaint fails to identify any contract between the parties. Without these elements, the Sparrows cannot state a plausible claim for breach of contract against BANA, Nationstar or Fisher.

In addition to their breach of contract claims, however, the Sparrows also allege that the defendants breached an overarching covenant of good faith and fair dealing in their interactions with the Sparrows.  Although Maryland law dictates that every contract imposes a duty of good faith and fair dealing, the defendants correctly argue that the Sparrows' inability to identify any underlying agreement between the parties hinders their ability to state a claim based on the defendants' alleged bad faith.  *See Baker v. Sun Co., Inc. (R & M)*, 985 F. Supp. 609, 610 (D. Md. 1997).  Moreover, absent an underlying breach of contract claim, Maryland courts have not recognized a separate cause of action for breach of good faith and fair dealing.  *See id.*; *see also Froelich v. Erickson*, 96 F.Supp.2d 507, 522 (D.Md. 2000); *Howard Oaks, Inc. v. Maryland Nat'l Bank*, 810 F.Supp. 674, 677 (D. Md. 1993).  The Sparrows' claim is therefore dismissed.

## V.      Intentional Infliction of Emotional Distress

Because of the defendants' apparent inability to correct the alleged errors in the servicing of the Sparrows' mortgage loan, the Sparrows also seek relief for emotional distress.  In Maryland, the tort of intentional infliction of emotional distress requires a plaintiff to allege facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe.  *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).   As courts in this district have observed on numerous occasions, "the tort of intentional infliction of emotional distress is rarely viable."  *Id.* (quoting *Farasat v. Paulikas*, 32 F.Supp.2d 244, 247 (D.Md. 1997)); *see also The Estate of Ellen Alcade v. Deaton Specialty Hosp. Home, Inc.*, 133 F.Supp.2d 702, 712 (D.Md. 2001) (reiterating that "[a] deficiency in any one [element] is fatal" to a plaintiff's prospective claim for intentional infliction of emotional distress); *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75

(1991) (citations omitted) ("Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'").

In keeping with this tradition, the amended complaint in this case fails to set forth sufficient facts to satisfy the pleading requirements for this claim. The Sparrows do not allege any facts to suggest either severe emotional distress, or intentional or reckless conduct on the part of the defendants. Although the Sparrows maintain that they attempted to resolve their account issues through "numerous additional telephone calls and letters" and that failure to do so resulted in a "constant deluge of foreclosure notices and letters," these inconveniences—while stressful—are not enough to satisfy Maryland's requirement that the Sparrows plead "severe" emotional distress or "outrageous" conduct on the part of BANA, Nationstar and Fisher. (ECF No. 22-11 at 2). Although the plaintiffs allege that, in their letter to Nationstar on January 17, 2014, they "specifically advised Nationstar of the difficulty and emotional distress [they] were experiencing due to its mishandling of their mortgage payments and accounting errors", *see* (Compl. ¶ 23; ECF No. 22 at 9); (ECF No. 22-11 at 2), the January 2014 letter mentions only that: (1) a Nationstar representative promised to update the Sparrows following a January 3, 2014 telephone conversation but had not done so within eleven days; (2) the account was placed in foreclosure and (3) the Sparrows had received "threatening letters of foreclosure." (ECF No. 22-17 at 2). Contrary to the Sparrows' allegations, the letter does not expressly address the Sparrows' mental or emotional well-being. Nor have the Sparrows pleaded any additional facts that, if true, would demonstrate severe emotional trauma. Because the amended complaint thus fails to state a plausible claim for intentional infliction of emotional distress, I will grant the defendants' motion to dismiss.

17

VI.     **Fraud**

Finally, the Sparrows seek relief for BANA, Nationstar and Fisher's alleged fraud.  In Maryland, a claim for fraud requires that: (1) the defendant made a false representation to the plaintiff; (2) its falsity was either known to the defendant or was made with reckless indifference as to its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation.  *McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 373 (D. Md. 2005).  Moreover, Federal Rule of Civil Procedure 9(b) dictates that fraud claims must be plead with particularity.  Fed. R. Civ. P 9(b). To plead fraud with particularity, a complaint must refer to "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)).

Unfortunately for the Sparrows, their complaint fails to identify the specific representations that they believe were false or fraudulent.  Although this pleading deficiency is alone sufficient to justify dismissal, it is worth noting that the Sparrows' claim also fails in other respects—the amended complaint fails to allege that any misrepresentation was made for the purpose of defrauding the Sparrows, or that the false statements were made with knowledge of their falsity or with reckless disregard for the truth.  For these reasons, the Sparrows' fraud claim cannot overcome the defendants' motions to dismiss.

VII.    **Accounting**

In addition to their claims for damages, the Sparrows also seek an accounting of their loan.   Under Maryland law, an accounting is appropriate under two circumstances:  (1) where one party is under an obligation to pay money to another party based upon facts and records which are known and kept exclusively by the party to whom the obligation is owed, or (2) where there is a confidential or fiduciary relationship between the parties and a duty rests upon the defendant to render an account.  *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 36 A.3d 399 (2012); *see also Gephardt v. Mortg. Consultants, Inc.*, No. JFM-10-1537, 2011 WL 531976, at *4–5 (D.Md. Feb. 8, 2011) (citations omitted).  BANA and Nationstar, however, contend that the Sparrows are not entitled to an accounting because the Sparrows had the ability to track their payments to their loan servicer, and because the relationship between a borrower and a loan servicer is not confidential or fiduciary in nature.  I agree.

Although the Sparrows were required to make payments on their loan to their loan servicers, the Sparrows have not alleged that either BANA or Nationstar exercised exclusive control over the records for the account.  As another court in this district has recently demonstrated, "[b]y the very nature of a loan agreement, both sides have an opportunity to [] track [] the amounts paid and owed on the statements."  *Saravia v. Select Portfolio Servicing, Inc.*, No. 13-cv-1921, 2014 WL 2865798 at *8 (D. Md. June 23, 2014).  Here, the Sparrows had the opportunity to monitor the payments and charges to their loan.  Although their letters to BANA and Nationstar from 2012 to 2014 demonstrate that the Sparrows often disputed their servicer's statements regarding when payments were due and the amounts due at a given time, the Sparrows were still capable of tracking their payments.  Indeed, their letters represent that they did exactly that.   Consequently, the Sparrows are not eligible for an accounting based on the first ground articulated under Maryland law.

Moreover, as defendants correctly assert, the relationship between a borrower and a bank is not fiduciary in nature. *See id.*; *see also Yousef v. Trustbank Sav., F.S.B.*, 81 Md.App. 527, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990). Because the Sparrows have failed to allege any facts that suggest that BANA and Nationstar owed any duty to the Sparrows beyond those associated with  the relationship between a borrower and the servicer of his mortgage loan, the Sparrows are not entitled to an accounting based on a confidential or fiduciary relationship.

Their request for an accounting is therefore dismissed.

## VIII.   Injunctive Relief

Finally, the Sparrows seek an injunction to prevent foreclosure. Because injunctive relief—both preliminary and permanent—requires a plaintiff to demonstrate the merits of his underlying claim(s), *see, e.g.*, *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) (articulating that plaintiffs seeking an injunction must establish success on the merits); *W.Va. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (reiterating the elements of a preliminary injunction), and because the Sparrows have failed to adequately state a plausible claim for relief with respect to any of their defendants, the Sparrows' requests for preliminary and/or permanent injunction are dismissed.

## IX.   The Sparrows' Motion for Permission to File Electronic Media

As a separate matter, in support of their opposition to defendants' motions to dismiss, the Sparrows have filed a third request for judicial notice and a motion to file electronic media, through which they seek to introduce a letter and spreadsheet from the United States Consumer Financial Protection Bureau, obtained pursuant to a Freedom of Information Act request, that encompasses 33,504 entries and exceeds 11,000 pages. Because the plaintiffs have not adequately articulated the relevance of this report or alleged that that facts contained therein are

not subject to reasonable dispute, the Sparrows' requests for judicial notice and motion to file electronic media are denied.

## CONCLUSION

For the aforementioned reasons, BANA and Nationstar's motion to dismiss is granted.[5] Fisher Law Group's motion to dismiss is similarly granted.  The Sparrow's request for judicial notice and motion to file electronic media is denied.  A separate order closing the case follows.


_____09/04/2014_____                     _____/s/_____
Date                                                J. Frederick Motz
                                                    United States District Judge

---

[5] Because I find that plaintiffs have not alleged sufficient facts to state any viable claim, I need not address the defendants' contention that the Sparrows' amended complaint also violates Federal Rule of Civil Procedure 15, or that Nationstar Mortgage Holdings—Nationstar's parent corporation—is not a proper named party to this action.